| | |
|---|---|
| 1 | MARC J. WINTHROP – State Bar No. 63218 |
| | mwinthrop@winthropcouchot.com |
| 2 | GARRICK A. HOLLANDER – State Bar No. 166316 |
| 3 | ghollander@winthropcouchot.com |
| | PAYAM KHODADADI   State Bar No. 239906 |
| 4 | pkhodadadi@winthropcouchot.com |
| 5 | **WINTHROP COUCHOT** |
| | **PROFESSIONAL CORPORATION** |
| 6 | 660 Newport Center Drive, Suite 400 |
| | Newport Beach, CA 92660 |
| 7 | Telephone: (949) 720-4100 |
| | Facsimile: (949) 720-4111 |
| 8 | |
| 9 | General Insolvency Counsel |
| | for Debtors and Debtors-in-Possession |

**UNITED STATES BANKRUPTCY COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

**SANTA ANA DIVISION**

| | |
|---|---|
| In re: | Case No. 8:10-bk-12735 RK |
| ☒ ENIVEL, INC., a Hawaii corporation | Jointly Administered with Case Nos. |
| ☒ CLEANERS CLUB ACQUISITION SUB, INC., a California corporation | 8:10-bk-12742 RK; 8:10-bk-12740 RK; 8:10-bk-12748 RK; 8:10-bk-12745 RK; |
| ☒ STEAM PRESS HOLDINGS, INC., a Hawaii corporation | 8:10-bk-12746 RK; 8:10-bk-12736 RK; 8:10-bk-12743 RK |
| ☒ U.S. DRY CLEANING SERVICES CORPORATION, a Delaware corporation, dba U.S. DRY CLEANING CORPORATION | Chapter 11 Proceedings |
| ☒ USDC FRESNO, INC., a California corporation | **DEBTORS' NOTICE OF MOTION AND MOTION FOR ORDER EXTENDING THE DEBTORS' PLAN EXCLUSIVITY PERIODS; MEMORANDUM OF POINTS AND AUTHORITIES; DECLARATION OF ROBERT Y. LEE IN SUPPORT THEREOF** |
| ☒ USDC FRESNO 2, INC., a California corporation | |
| ☒ USDC PORTSMOUTH, INC., a California corporation | |
| ☒ USDC TUCHMAN INDIANA, INC., a California corporation | DATE:  July 27, 2010<br>TIME:  2:30 p.m.<br>PLACE:  Courtroom 5D<br>           411 West Fourth Street<br>           Santa Ana, CA 92701 |
| Debtors and Debtors-in-Possession. | [11 U.S.C. §1121] |

MAINDOCS-#148246-v3-Enivel Exclusivity Motion.DOC

1     **TO THE HONORABLE ROBERT N. KWAN, UNITED STATES BANKRUPTCY**

2 **JUDGE, THE OFFICE OF THE UNITED STATES TRUSTEE, AND ALL OTHER**

3 **PARTIES-IN-INTEREST:**

4     Enivel, Inc., a Hawaii corporation ("Enivel"), Cleaners Club Acquisition Sub, Inc., a

5 California corporation ("Sub Club"), Steam Press Holdings, Inc., a Hawaii corporation ("Steam

6 Press"), U.S. Dry Cleaning Services Corporation, a Delaware corporation, dba U.S. Dry

7 Cleaning Corporation ("USDC"), USDC Fresno, Inc., a California corporation ("Fresno"),

8 USDC Fresno 2, Inc., a California corporation ("Fresno 2"), USDC Portsmouth, Inc., a

9 California corporation ("Portsmouth") and USDC Tuchman Indiana, Inc., a California

10 corporation ("Tuchman"), the jointly administered debtors and debtors-in-possession in the

11 above entitled Chapter 11 proceedings (collectively, the "Debtors or the "Company"") hereby

12 move (the "Motion") the Court, pursuant to the provisions of Section 1121 of the Bankruptcy

13 Code, for an Order granting the following relief:

14     1.     Extending, through and including October 1, 2010, the Debtors' exclusive periods

15 to file a plan of reorganization ("Plan");

16     2.     Extending, through and including December 1, 2010, the Debtors' exclusive period

17 to solicit acceptances to such a Plan;

18     3.     Providing that such Order is without prejudice to the Debtors' right to seek further

19 extensions of the applicable exclusivity periods provided by Section 1121 of the Bankruptcy

20 Code; and

21     4.     Granting to the Debtors such other and further relief as is just and proper under the

22 circumstances of these cases.

23     This Motion is made on the basis of the within points and authorities, the Declaration of

24 Robert Y. Lee attached hereto, and on such other evidence as the Court elects to consider prior to

25 or at the hearing on this matter.

26     **IF YOU DO NOT OPPOSE THE MOTION DESCRIBED ABOVE, YOU NEED**

27 **TAKE NO FURTHER ACTION. HOWEVER, IF YOU OBJECT TO THE MOTION,**

28 **PURSUANT TO LOCAL BANKRUPTCY RULE 9013-1(o), OBJECTIONS MUST BE**

MAINDOCS-#148246-v3-Enivel_Exclusivity_Motion.DOC

FILED WITH THE COURT WITHIN FOURTEEN (14) DAYS OF THE DATE OF SERVICE OF THIS MOTION. YOU MUST FILE YOUR OBJECTION AND REQUEST FOR A HEARING WITH THE CLERK OF THE UNITED STATES BANKRUPTCY COURT, LOCATED AT 411 WEST FOURTH STREET, SANTA ANA, CA 92701. YOU MUST SERVE A COPY OF YOUR OBJECTION TO THE MOTION, AND REQUEST FOR A HEARING, UPON THE DEBTORS' COUNSEL AT THE MAILING ADDRESS INDICATED IN THE UPPER LEFT CORNER OF THE FIRST PAGE OF THE MOTION, AND UPON THE OFFICE OF THE UNITED STATES TRUSTEE LOCATED AT 411 WEST FOURTH STREET, SANTA ANA, CA 92701. UPON RECEIPT OF A WRITTEN OBJECTION AND REQUEST FOR A HEARING, THE DEBTORS' COUNSEL WILL OBTAIN A HEARING DATE AND GIVE APPROPRIATE NOTICE THEREOF. ANY FAILURE TO TIMELY FILE AND SERVE OBJECTIONS MAY RESULT IN ANY SUCH OBJECTIONS BEING WAIVED, AND THE COURT MAY ENTER AN ORDER GRANTING THE MOTION WITHOUT FURTHER NOTICE.

DATED: July 2, 2010

**WINTHROP COUCHOT**
**PROFESSIONAL CORPORATION**

By:  /s/ Marc J. Winthrop
  Marc J. Winthrop
  Garrick A. Hollander
  Payam Khodadadi
General Insolvency Counsel for the Debtors
and Debtors-in-Possession

MAINDOCS-#148246-v3-Enivel_Exclusivity_Motion.DOC

# MEMORANDUM OF POINTS AND AUTHORITIES

## I.

## STATEMENT OF FACTS

**A.  The Debtors.**

USDC, through its wholly owned subsidiaries[1] acquired in connection with its strategy to "rollup" the highly fragmented dry cleaning industry, has become the largest owner and operator of dry cleaning stores in the country. The Debtors currently employ approximately 600 employees and own and operate 72 dry cleaning stores generating of approximately $25 million in annual revenues. The Company is the largest owner and operator of dry cleaning stores in the nation. USDC, a publicly-traded Delaware corporation (UDRY.PK), is headquartered in Newport Beach, California.

The Debtors' business model is based on acquiring market dominant dry cleaning chains, improving efficiencies, refranchising and converting their stores into full service garment care retail stores. The Debtors' operational efficiencies are based, in large part, upon their development and implementation of an environmentally green centralized processing "hub and spoke" model, where the hub is the sole dry cleaning plant for a geographically convenient group of stores. This model enables the Debtors to produce a superior and more efficient cleaning process for all stores. The hub and spoke model removes the actual processing of garments from the retail stores, which allows the stores to focus entirely on customer service and building revenue. Once the Debtors have improved the operational efficiencies, they intend to refranchise the stores, which will convert the currently company owned stores into franchised stores. This franchising opportunity offers franchisees the benefit of a turn key operation with an already existing strong reputation in the community and a verifiable history of profits. Also critical to the

---

[1] USDC is the parent company of the following jointly administered debtors: Tuchman, which owns and operates 25 stores in Indianapolis; Portsmouth, which owns and operates 10 stores in Virginia; Fresno, which owns and operates 10 stores in Fresno, California and 2 in Arizona; Fresno 2, Inc , which owns and operates 7 stores in Fresno, California; Club Sub, which owns and operates 7 stores in the Inland Empire in California; and Steam Press, which is the parent company of Enivel, which owns and operates 16 stores in Hawaii. USDC is also the parent company of the following non-debtor entities: US Dry Cleaning Franchise Corporation, which has no assets or operations and is intended to serve as the franchisor for the Debtors' operations once they begin to refranchise their stores; and USDCC CVR Merger Sub, LLC, which used to own and operate stores in Palm Springs, but no longer has any assets or operations.

Debtors' business strategy, will be an expansion of the product and service offering to customers to include full garment care such as repair and tailoring.

### B. Events Precipitating The Debtors' Financial Difficulties and Efforts to Reorganize.

USDC was founded in 2005 to consolidate the highly fragmented dry cleaning industry. This rollup strategy requires significant capital for costs of acquisitions. The Debtors grew rapidly from 2007-2009, tripling their revenue and meeting store cash flow projections, and growing from 200 to 600 employees. In order to continue to implement their business strategy and finance their growth, in 2007, the Debtors' parent company went public to obtain additional financing. The Debtors' business model, operations and success was dependent upon the Debtors' ability to access and obtain financing from the capital markets. Unfortunately, significant and critical debt and equity financing that was expected became unavailable in light of the negative impact upon and freezing of the capital markets caused by the economic turmoil, which occurred in October 2008. Consequently, the Debtors were forced to halt their growth and internally finance the assimilation of the acquisitions completed in 2008 through their own working capital. The internal working capital alone, however, was not sufficient to retire its debt due between December 2009 and March 2010. Making matters worse, the Debtors were denied access and control over their 19 store operation in Fresno, California and Arizona by a management company overseeing such operation. This further negatively impacted the Debtors' cash flow and ability to meet their obligations.

Based on the foregoing, the Debtors were late in paying rent to many of their landlords, resulting in receipt of many notices to pay rent or quit. In addition, all of the Debtors' debt became due between December 2009 and March 2010.

Beginning the fourth quarter of 2008, in an effort to address their financial difficulties, prior to filing for Chapter 11 the Debtors took the following steps to reduce overhead: (1) eliminated all investor relations activity, resulting in annual savings of approximately $480,000; (2) eliminated legal and accounting relating to stock support, resulting in annual savings of approximately $600,000; (3) reduced levels of senior management and staff to minimal

MAINDOCS #148246-v3-Enivel_Exclusivity_Motion.DOC

levels, resulting in annual savings of approximately $1,240,000; and (4) eliminated assimilation consultants (senior management absorbed the work), resulting in annual savings of approximately $700,000. In addition, the Debtors significantly improved their debt structure by converting $7,000,000 of debt into equity. As a further improvement to cash flow, the Debtors' senior management deferred compensation to aid the Debtors' operations.

The Debtors continued to identify ways to secure a long-term capital structure to replace short-term debt. While the Debtors' actions were (and are) instrumental in their efforts to reorganize, they were not able to timely resolve the Debtors' financial problems. Consequently, in order to preserve their stores and overall operation, on March 4, 2010 ("Petition Date"), the Debtors filed voluntary petitions under Chapter 11 of the Bankruptcy Code.

### C. **Post-Petition Operation/Progress Towards Reorganization**.

These cases were filed almost four months ago but, due in part, to the Debtors' financial condition, litigation and the complexity of dealing with over eight operating entities, 72 retail stores, including landlord negotiations and other various internal and external operational issues, these cases have still not stabilized to the point that the Debtors can focus on producing a plan. Other factors which have engendered significant attention are the ongoing relationship difficulties with the Garnet parties regarding the Fresno locations, negotiations with the Committee on the employment of a Chief Restructuring Officer and employment of an investment banker which is needed to raise the exit financing that the Debtors will require to propose and confirm a plan.

All the while, the Debtors have continued to identify ways to improve their cash flow and to lower their costs. To this end, the Debtors have rejected numerous contracts and reduced the number of stores from 78 to 72, by rejecting leases on unprofitable locations.

As noted, the Debtors have also engaged, on a regular basis, with the creditors' committee and the secured creditors to resolve the various significant issues raised in these cases. Importantly, on June 24, 2010, after intense negotiations, the Debtors filed a motion to appoint Brian Weiss as Debtors' Chief Restructuring Officer. The Motion to Approve the Chief Restructuring Officer is set for July 6, 2010. This appointment was sought by the Debtors in order to add efficiencies to the reorganization process and to provide assurances to creditors that every

| | |
|---|---|
| 1 | effort was being made by to ensure that the Debtors fulfill their fiduciary duties to creditors to |
| 2 | maximize the value of the estate for all of the constituencies. |
| 3 |     The Debtors have also regularly consulted with the creditors' committee and the secured |
| 4 | creditors regarding cash collateral issues. On March 5, 2010, the Debtors initially filed a motion, |
| 5 | which pursuant to an order of the Court, authorizes the Debtors to use cash collateral on an |
| 6 | interim basis. The Debtors, the creditors committee and the secured creditors are currently |
| 7 | working out the final terms of the cash collateral budget and have stipulated to continue the final |
| 8 | cash collateral hearing to July 6, 2010. |
| 9 |     As noted, the Debtors are also involved in ongoing negotiations with the Committee |
| 10 | relating to its concerns with the hiring of National Securities as an investment banker to assist the |
| 11 | Debtors in obtaining post-petition financing. These negotiations are on-going and essential in the |
| 12 | Debtors' reorganization efforts. |
| 13 |     Finally, the Debtors have been negotiating with the Gamet parties over a standstill |
| 14 | agreement regarding the use of cash collateral and the pre-petition litigation brought against them |
| 15 | by Gamet. |
| 16 |     In summary, notwithstanding the complexity of these eight cases and the fact that the |
| 17 | Debtors filed their petitions only approximately four months ago, the Debtors have made |
| 18 | significant progress in their cases. The Debtors, however, have encountered numerous and varied |
| 19 | challenges described above, which have delayed the Debtors' ability to focus on constructing a |
| 20 | plan of reorganization. Due to the disarray in their financial records at the outset of the case, the |
| 21 | Debtors initially encountered challenges in timely and accurately complying with U.S. Trustee |
| 22 | requirements, but are now current in their filings and monthly operating reports. Notwithstanding |
| 23 | these challenges, the Debtors have made substantial progress in negotiations with the creditors |
| 24 | committee and the secured creditors. The Debtors believe that extending the exclusivity period |
| 25 | from July 2, 2010 through and including October 1, 2010 will enable the Debtors to resolve many |
| 26 | of the foregoing issues and to file a confirmable plan of reorganization. |
| 27 | |
| 28 | |

## II.

## THIS COURT HAS AUTHORITY TO EXTEND THE EXCLUSIVE PERIODS FOR FILING AND SOLICITING ACCEPTANCES TO A PLAN

Pursuant to Section 1121(b) of the Bankruptcy Code, a Chapter 11 debtor has the exclusive right to file a plan of reorganization during the first 120 days following the filing date of a Chapter 11 bankruptcy petition and to thereafter solicit acceptances to any plan so filed for a period of an additional 60 days.

Section 1121(b) of the Bankruptcy Code provides:

> Except as otherwise provided in this section, only the debtor may file a plan until after 120 days after the date of the order for relief under this chapter.

11 U.S.C. § 1121(b).

No other party in interest may file a plan of reorganization unless: (i) a trustee has been appointed, (ii) the debtor has not filed a plan within 120 days after the date of the order of relief, or (iii) the debtor has not filed a plan that has been accepted before 180 days after the date of the order for relief by each class of claims or interests that is impaired by the plan. See 11 U.S.C. § 1121(c). However, Bankruptcy Code Section 1121(d) empowers the Court to reduce or extend the 120-day and 180-day periods for "cause."

Section 1121(d) of the Bankruptcy Code provides in pertinent part:

> On request of a party in interest made within the respective periods specified in subsections (b) and (c) of this section and after notice and a hearing, the court may for cause reduce or increase the 120-day period or the 180-day period referred to in this section.

11 U.S.C. § 1121.

The Bankruptcy Code does not define "cause" as used in Section 1121(d) so the decision of whether or not to grant a request to extend or shorten the exclusivity periods lies within the sound discretion of the bankruptcy judge. See, e.g., Official Comm. of Unsecured Creditors v. Henry Mayo Newhall Mem'l Hosp. (In re Henry Mayo Newhall Mem'l Hosp.), 282 B.R. 444, 453 (B.A.P. 9th Cir. 2002); In re Adelphia Commc'ns Corp., 352 B.R. 578, 590 (Bankr. S.D.N.Y.

2006). The "cause" standard referred to in Section 1121 has been recognized as a general standard that allows the bankruptcy court "maximum flexibility to suit various types of reorganization proceedings." In re Public Serv. Co. of New Hampshire, 88 B.R. 521, 534 (Bankr. D.N.H. 1988).

The primary consideration for a bankruptcy court in determining whether to modify a debtor's exclusivity is whether "adjustment of exclusivity will facilitate moving the case forward towards a fair and equitable resolution." In re Henry Mayo Newhall Mem'l Hosp., 282 B.R. at 453; see also In re Dow Corning Corp., 208 B.R. 661, 670 (Bankr. E.D. Mich. 1997); In re Adelphia Commc'ns, 352 B.R. at 590. Further, the legislative history for Section 1121 dictates that granting an extension of exclusivity "should be based on a showing of some promise of probable success." Senate Report No. 95-989, 95th Cong., 2d Sess. 118 (1978); see also In re Landmark Park Plaza Ltd. P'ship, 167 B.R. 752, 756 (Bankr. D. Conn. 1994) (requiring "a showing of some promise of probable success"); In re Montgomery Court Apartments of Ingham County, Ltd., 126 B.R. 537, 539 (Bankr. S.D. Ohio 1991) ("[A] debtor seeking an extension should make a showing 'of some probable success' in formulating a plan."); In re Grossinger's Assocs., 116 B.R. 34, 36 (Bankr. S.D.N.Y. 1990) (requiring "probable success in formulating a plan of reorganization").

Other criteria that courts consider in determining if "cause" exists include: (1) the number of extensions that have been requested; (2) whether the case is complicated; (3) the time period the case has been pending, relative to its size and complexity; (4) whether the debtor is proceeding in good faith; (5) whether the debtor is paying current expenses; (6) whether the debtor has shown a reasonable prospect for filing a viable plan; (7) whether the debtor is making satisfactory progress negotiating with key creditors; (8) whether the debtor is seeking an extension of exclusivity to pressure creditors; and (9) whether the debtor is depriving the official committee of unsecured creditors of material or relevant information. See In re Dow Corning, 208 B.R. at 661; In re Express One Int'l, Inc., 194 B.R. 98, 100 (Bankr. E.D. Tex. 1996). Courts have also recognized that the diligence of management and the proper administration of the case

are factors supporting an extension of the exclusivity periods. See In re United Press Int'l, 60 B.R. 265 (Bankr. D.D.C. 1986).

In these cases, "cause" exists to grant the Debtors' request for an extension of the exclusivity periods. Such request satisfies the general principles established by the courts as guideposts in ascertaining what constitutes "cause" within the meaning of Section 1121(d). As set forth above, this is the Debtors' first request for an extension. Further, the Debtors' cases were filed only four months ago and have proven to be quite complicated. The Debtors have not deprived the creditors committee of material or relevant information and are not seeking this extension to pressure creditors. In fact, the Debtors have been proceeding in good faith, having worked continuously with the secured creditors and the creditors committee to resolve many contentious issues. Finally, and notwithstanding the complexity in these cases, the Debtors have begun working on a plan of reorganization, and expect to have it filed by the extended time requested herein. Ultimately, extension of the exclusivity periods as requested herein will significantly facilitate the proposal of a confirmable Plan – a truly fair and equitable resolution to these cases.

## III.

## CONCLUSION

Based on the foregoing, the Debtors respectfully request that the Court grant the relief requested herein.

DATED: July 2, 2010

**WINTHROP COUCHOT
PROFESSIONAL CORPORATION**

By: /s/ Marc J. Winthrop
Marc J. Winthrop
Garrick A. Hollander
Payam Khodadadi
General Insolvency Counsel for the Debtors and Debtors-in-Possession

## DECLARATION OF ROBERT Y. LEE

I, Robert Y. Lee, hereby declare as follows:

1. I am the Chief Executive Officer of Enivel, Inc., a Hawaii corporation, and the other above-captioned jointly administered debtors and debtors-in-possession (collectively, the "Debtors")[1], and am responsible for overseeing the operations and financial performance of the Debtors. Consequently, I am involved in supervising all aspects of the Debtors' financial affairs.

2. The facts stated herein are within my personal knowledge, and if called upon to testify to such facts, I could and would testify competently thereto.

**The Debtors.**

3. USDC, through its wholly owned subsidiaries[2] acquired in connection with its strategy to "rollup" the highly fragmented dry cleaning industry, has become the largest owner and operator of dry cleaning stores in the country. The Debtors currently employ approximately 600 employees and own and operate 72 dry cleaning stores generating of approximately $25 million in annual revenues. The Company is the largest owner and operator of dry cleaning stores in the nation.

4. USDC, a publicly-traded Delaware corporation (UDRY.PK), is headquartered in Newport Beach, California.

5. The Debtors' business model is based on acquiring market dominant dry cleaning chains, improving efficiencies, refranchising and converting their stores into full service garment care retail stores. The Debtors' operational efficiencies are based, in large part, upon their development and implementation of an environmentally green centralized processing "hub and spoke" model, where the hub is the sole dry cleaning plant for a geographically convenient group

---

[1] All capitalized terms used herein have the meanings provided in the *Debtors' Motion for Order Extending the Debtors' Plan Exclusivity Periods.*

[2] USDC is the parent company of the following jointly administered debtors: Tuchman, which owns and operates 25 stores in Indianapolis; Portsmouth, which owns and operates 10 stores in Virginia; Fresno, which owns and operates 10 stores in Fresno, California and 2 in Arizona; Fresno 2, Inc., which owns and operates 7 stores in Fresno, California; Club Sub, which owns and operates 7 stores in the Inland Empire in California; and Steam Press, which is the parent company of Enivel, which owns and operates 16 stores in Hawaii. USDC is also the parent company of the following non-debtor entities: US Dry Cleaning Franchise Corporation, which has no assets or operations and is intended to serve as the franchisor for the Debtors' operations once they begin to refranchise their stores; and USDCC CVR Merger Sub, LLC, which used to own and operate stores in Palm Springs, but no longer has any assets or operations.

of stores. This model enables the Debtors to produce a superior and more efficient cleaning process for all stores. The hub and spoke model removes the actual processing of garments from the retail stores, which allows the stores to focus entirely on customer service and building revenue. Once the Debtors have improved the operational efficiencies, they intend to refranchise the stores, which will convert the currently company owned stores into franchised stores. This franchising opportunity offers franchisees the benefit of a turn key operation with an already existing strong reputation in the community and a verifiable history of profits. Also critical to the Debtors' business strategy, will be an expansion of the product and service offering to customers to include full garment care such as repair and tailoring.

**Events Precipitating The Debtors' Financial Difficulties and Efforts to Reorganize.**

6.     USDC was founded in 2005 to consolidate the highly fragmented dry cleaning industry. This rollup strategy requires significant capital for costs of acquisitions. The Debtors grew rapidly from 2007-2009, tripling their revenue and meeting store cash flow projections, and growing from 200 to 600 employees. In order to continue to implement their business strategy and finance their growth, in 2007, the Debtors' parent company went public to obtain additional financing. The Debtors' business model, operations and success was dependent upon the Debtors' ability to access and obtain financing from the capital markets. Unfortunately, significant and critical debt and equity financing that was expected became unavailable in light of the negative impact upon and freezing of the capital markets caused by the economic turmoil, which occurred in October 2008. Consequently, the Debtors were forced to halt their growth and internally finance the assimilation of the acquisitions completed in 2008 through their own working capital. The internal working capital alone, however, was not sufficient to retire its debt due between December 2009 and March 2010. Making matters worse, the Debtors were denied access and control over their 19 store operation in Fresno, California and Arizona by a management company overseeing such operation. This further negatively impacted the Debtors' cash flow and ability to meet their obligations.

7. Based on the foregoing, the Debtors were late in paying rent to many of their landlords, resulting in receipt of many notices to pay rent or quit. In addition, all of the Debtors' debt became due between December 2009 and March 2010.

8. Beginning the fourth quarter of 2008, in an effort to address their financial difficulties, prior to filing for Chapter 11 the Debtors took the following steps to reduce overhead: (1) eliminated all investor relations activity, resulting in annual savings of approximately $480,000; (2) eliminated legal and accounting relating to stock support, resulting in annual savings of approximately $600,000; (3) reduced levels of senior management and staff to minimal levels, resulting in annual savings of approximately $1,240,000; and (4) eliminated assimilation consultants (senior management absorbed the work), resulting in annual savings of approximately $700,000. In addition, the Debtors significantly improved their debt structure by converting $7,000,000 of debt into equity. As a further improvement to cash flow, the Debtors' senior management deferred compensation to aid the Debtors' operations.

9. The Debtors continued to identify ways to secure a long-term capital structure to replace short-term debt. While the Debtors' actions were (and are) instrumental in their efforts to reorganize, they were not able to timely resolve the Debtors' financial problems. Consequently, in order to preserve their stores and overall operation, on March 4, 2010 ("Petition Date"), the Debtors filed voluntary petitions under Chapter 11 of the Bankruptcy Code.

**Post-Petition Operation/Progress Towards Reorganization**.

10. These cases were filed almost four months ago but, due in part, to the Debtors' financial condition, litigation and the complexity of dealing with over eight operating entities, 72 retail stores, including landlord negotiations and other various internal and external operational issues, these cases have still not stabilized to the point that the Debtors can focus on producing a plan. Other factors which have engendered significant attention are the ongoing relationship difficulties with the Gamet parties regarding the Fresno locations, negotiations with the Committee on the employment of a Chief Restructuring Officer and employment of an investment banker which is needed to raise the exit financing that the Debtors will require to propose and confirm a plan.

-11-

11. All the while, the Debtors have continued to identify ways to improve their cash flow and to lower their costs. To this end, the Debtors have rejected numerous contracts and reduced the number of stores from 78 to 72, by rejecting leases on unprofitable locations.

12. As noted, the Debtors have also engaged, on a regular basis, with the creditors' committee and the secured creditors to resolve the various significant issues raised in these cases. Importantly, on June 24, 2010, after intense negotiations, the Debtors filed a motion to appoint Brian Weiss as Debtors' Chief Restructuring Officer. The Motion to Approve the Chief Restructuring Officer is set for July 6, 2010. This appointment was sought by the Debtors in order to add efficiencies to the reorganization process and to provide assurances to creditors that every effort was being made by to ensure that the Debtors fulfill their fiduciary duties to creditors to maximize the value of the estate for all of the constituencies.

13. The Debtors have also regularly consulted with the creditors' committee and the secured creditors regarding cash collateral issues. On March 5, 2010, the Debtors initially filed a motion, which pursuant to an order of the Court, authorizes the Debtors to use cash collateral on an interim basis. The Debtors, the creditors committee and the secured creditors are currently working out the final terms of the cash collateral budget and have stipulated to continue the final cash collateral hearing to July 6, 2010.

14. As noted, the Debtors are also involved in ongoing negotiations with the Committee relating to its concerns with the hiring of National Securities as an investment banker to assist the Debtors in obtaining post-petition financing. These negotiations are on-going and essential in the Debtors' reorganization efforts.

15. Finally, the Debtors have been negotiating with the Gamet parties over a standstill agreement regarding the use of cash collateral and the pre-petition litigation brought against them by Gamet.

16. In summary, notwithstanding the complexity of these eight cases and the fact that the Debtors filed their petitions only approximately four months ago, the Debtors have made significant progress in their cases. The Debtors, however, have encountered numerous and varied challenges described above, which have delayed the Debtors' ability to focus on constructing a

MAINDOCS-#148246-v3-Enivel_Exclusivity_Motion.DOC

plan of reorganization. Due to the disarray in their financial records at the outset of the case, the Debtors initially encountered challenges in timely and accurately complying with U.S. Trustee requirements, but are now current in their filings and monthly operating reports. Notwithstanding these challenges, the Debtors have made substantial progress in negotiations with the creditors committee and the secured creditors. Extending the exclusivity period from July 2, 2010 through and including October 1, 2010 will enable the Debtors to resolve many of the foregoing issues and to file a confirmable plan of reorganization.

17.   As set forth above, this is the Debtors' first request for an extension. Further, the Debtors' cases were filed only four months ago and have proven to be quite complicated. The Debtors have not deprived the creditors committee of material or relevant information and are not seeking this extension to pressure creditors. In fact, the Debtors have been proceeding in good faith, having worked continuously with the secured creditors and the creditors committee to resolve many contentious issues. Finally, and notwithstanding the complexity in these cases, the Debtors have begun working on a plan of reorganization, and expect to have it filed by the extended time requested herein. Ultimately, extension of the exclusivity periods as requested herein will significantly facilitate the proposal of a confirmable Plan – a truly fair and equitable resolution to these cases.

Executed this 2nd day of July 2010, at Newport Beach, California.

_____
Robert Y. Lee

**NOTE:** When using this form to indicate service of a proposed order, **DO NOT** list any person or entity in Category I. Proposed orders do not generate an NEF because only orders that have been entered are placed on the CM/ECF docket.

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding. My business address is: 660 Newport Center Drive, 4th Fl., Newport Beach, CA 92660.

A true and correct copy of the foregoing document described as: DEBTORS' NOTICE OF MOTION AND MOTION FOR ORDER EXTENDING THE DEBTORS' PLAN EXCLUSIVITY PERIODS; MEMORANDUM OF POINTS AND AUTHORITIES; DECLARATION OF ROBERT Y. LEE IN SUPPORT THEREOF will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner indicated below:

I. **TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING ("NEF")** – Pursuant to controlling General Order(s) and Local Bankruptcy Rule(s) ("LBR"), the foregoing document will be served by the court via NEF and hyperlink to the document. On July 2, 2010, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following person(s) are on the Electronic Mail Notice List to receive NEF transmission at the email address(es) indicated below:

☒ Service information continued on attached page

II. **SERVED BY U.S. MAIL OR OVERNIGHT MAIL** (indicate method for each person or entity served): On July 2, 2010 I served the following person(s) and/or entity(ies) at the last known address(es) in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States Mail, first class, postage prepaid, and/or with an overnight mail service addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

☒ Service information continued on attached page

III. **SERVED BY PERSONAL DELIVERY, FACSIMILE TRANSMISSION OR EMAIL** (indicate method for each person or entity served): Pursuant to F.R.Civ.P. 5 and/or controlling LBR. on July 2, 2010 I served the following person(s) and/or entity(ies) by personal delivery, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows. Listing the judge here constitutes a declaration that personal delivery on the judge will be completed no later than 24 hours after the document is filed.

zeitler@flg-law.com; zeitler@flgz.net;
ajones@wagnerjones.com
tjones@prodigy.net; Tom@usdrycleaning.com
knewman@menterlaw.com

☐ Service information continued on attached page

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

| July 2, 2010 | Susan Connor | _/s/_ |
|---|---|---|
| Date | Type Name | Signature |

-14-

MAINDOCS-#148246-v3-Envel_Exclusivity_Motion.DOC

## NEF SERVICE LIST

- Martin J Brill    mjb@lnbrb.com
- Frank Cadigan    frank.cadigan@usdoj.gov
- Christopher Celentino    ccelentino@duanemorris.com
- Susan S Davis    sdavis@coxcastle.com
- Denise Diaz    Denise.Diaz@rmsna.com
- Don Fisher    dfisher@ptwww.com
- Roger F Friedman    rfriedman@rutan.com
- Heather U Guerena    huguerena@duanemorris.com
- Kavita Gupta    kgupta@winthropcouchot.com
- Justin D Harris    jdh@mmwlawfirm.com, clr@mmwlawfirm.com
- Victor B Harris    vhlaw@prodigy.net
- Garrick A Hollander    sconnor@winthropcouchot.com
- Mark S Horoupian    mhoroupian@sulmeyerlaw.com
- Steven B Lever    sblever@leverlaw.com
- David W. Meadows    david@davidwmeadowslaw.com
- Dawn A Messick    dmessick@duanemorris.com
- Dennis D Miller    dmiller@steinlubin.com
- Kevin M Newman    knewman@menterlaw.com
- Christine M Pajak    cpajak@stutman.com
- Penelope Parmes    pparmes@rutan.com
- Martha E Romero    Romero@mromerolawfirm.com
- United States Trustee (SA)    ustpregion16.sa.ecf@usdoj.gov
- Marc J Winthrop    mwinthrop@winthropcouchot.com, pj@winthropcouchot.com

## SERVICE VIA FIRST CLASS MAIL
### (Unless otherwise indicated)

| | | |
|---|---|---|
| US Dry Cleaning Corporation<br>Attn: Robert Y. Lee, CEO<br>4040 MacArthur Blvd., #305<br>Newport Beach, CA 92660 | U.S. Trustee's Office<br>Frank Cadigan, Esq.<br>411 West Fourth St., #9041<br>Santa Ana, CA 92701 | **USDC – Special Notice,<br>SecuredCreditors, Committee<br>Document No. 141800<br>Limit Notice order Entd 4/2/10<br>Committee appointed** |
| Rossland Ten LLC, dba Hidden Valley Plaza<br>c/o Martin P. Eramo, Esq.<br>1590 S. Coast Highway, #13<br>Laguna Beach, CA 92651 | Rossland Ten LLC<br>c/o Martin P. Eramo, Esq.<br>1590 S. Coast Highway, Suite 13<br>Laguna Beach, CA 92651 | Gamet, Ent., Team Equipment, Bell Hop<br>c/o Stutman, Treister & Glatt PC<br>Jeffrey C. Krause, Es.<br>Christine M. Pajak, Esq.<br>1901 Avenue of the Stars, 12th Fl.<br>Los Angeles, CA 90067 |
| Committee Counsel<br>Christopher Celentino, Esq.<br>Duane Morris LLP<br>101 W. Broadway, #900<br>San Diego, CA 92101 | County of Orange<br>Attn: Authorized Agent<br>333 W. Santa Ana Blvd.<br>Santa Ana, CA 92701 | Standiford Square<br>c/o Ganzer & Williams<br>James E. Ganzer, Esq.<br>1617 St. Mark's Plaza, Suite A<br>Stockton, CA 95267 |
| Securities and Exchange Commission<br>Sandra W. Lavigna, Esq.<br>5670 Wilshire Blvd., 11th Fl.<br>Los Angeles, CA 90036-3548 | Craig Rankin/c/o Rhoton Family Trust<br>Levene Neale, Bender<br>1025 Constellation Blvd., #1700<br>Los Angeles, CA 90067 | Riaz Chauthani, Dir. Mergers & Acq.<br>US Dry Cleaning<br>4040 MacArthur Blvd., Suite 305<br>Newport Beach, CA 92660 |

MAINDOCS-#148246-v3-Emvel_Exclusivity_Motion.DOC

| | | |
|---|---|---|
| Abdul R. Chauthani<br>6100 Shaker Dr.<br>Riverside, CA 92506 | David Golubchik<br>Levene Neale, Bender<br>1025 Constellation Blvd., #1700<br>Los Angeles, CA 90067 | Hewlett-Packard Financial Services Company<br>Attn: Corocrate Officer<br>420 Mountain Ave<br>New Providence, NJ 07974 |
| Alliance Laundry Systems<br>Attn: Corporate Officer<br>P.O. Box 990 /Shepard & Hall Sts.<br>Ripon WI 54971 | DeLage Landen<br>Attn: Corporate Officer<br>PO Box 41601<br>Philadelphia, PA 19101-1601 | Internal Revenue Service<br>PO Box 145595<br>Cincinnati, OH 45250 |
| Axis Capital<br>Attn: Corporate Officer<br>PO Box 25555<br>Grant Island, NE 68800 | Employment Dev. Dept.<br>PO Box 826880<br>Sacramento, CA 94280 | Jonathan Neil & Assoc. Inc.<br>Attn: Corporate Officer<br>16633 Ventura Blvd.,#940<br>Encino, CA 71436 |
| Baker and Daniels<br>Attn: Corporate Officer<br>300 N. Meridian, #2700<br>Indianapolis, IN 46204 | Enterprise<br>Attn: Corporate Officer<br>1430 S. Village Way, Ste. V<br>Santa Ana, CA 92707 | Leaf<br>Attn: Corporate Officer<br>1818 Market St., 9th Fl.<br>Philadelphia, PA 19103-3647 |
| Bank Of The West, Trinty Division<br>Attn: Authorized Agent<br>475 Sansome St<br>San Francisco, CA 94111 | First Hawaiian Bank<br>Attn: Authorized Agent<br>PO Box 29450<br>Honolulu, HI 96807-1850 | Lester Taylor, Jr.<br>10450 Trabuco St.<br>Bellflower, CA 90706 |
| Bellhop Cleaners<br>Attn: Corporate Officer<br>529 Shields Ave.<br>Fresno, CA 93704 | GE Capital<br>Attn: Corporate Officer<br>10 Riverview Dr.<br>Danbury, CT 06810-6268 | Marion County Treasurer<br>PO Box 6145<br>Indianapolis, IN 46206 |
| Butler Capital<br>Attn: Corporate Officer<br>PO Box 677<br>Cockeysville, MD 21030 0677 | GMAC<br>Attn: Corporate Officer<br>PO Box 9001948<br>Louisville, KY 40290 | Martin Brill,<br>Levene Neale, Bender<br>1025 Constellation Blvd., #1700<br>Los Angeles, CA 90067 |
| Caine & Weiner Co., Inc.<br>LA Times<br>25910 Acero St., #360<br>Mission Viejo, CA 92691 | Hawaii State Tax Collector<br>1946 S. Beretania<br>Honolulu, HI 96826 | Merchants<br>Attn: Corporate Officer<br>1278 Hooksett Rd.<br>Hooksett, NH 03106 |
| Canon Financial Services<br>Attn: Corporate Officer<br>14901 Collections Center Dr.<br>Chicago, IL 60693 | Richardson & Patel<br>10900 Wilshire Blvd. Suite 500<br>Los Angeles, CA 90024 | Murphy Bank<br>Attn: Authorized Agent<br>P.O. Box 9725<br>Fresno, CA 93794 |

MAINDOCS-#148246-v3-Enivel_Exclusivity_Motion.DOC

| | | |
|---|---|---|
| Cape Construction, LLC<br>Attn: Managing Member<br>1206 Laskin Road, #150<br>Virginia Beach, VA 23451 | Riverside County Tax Collector<br>PO Box 12005<br>Riverside, CA 92502 | Team Equipment, Inc.<br>Attn: Corporate Officer<br>529 Shields Ave.<br>Fresno, CA 93704 |
| NewStar<br>Attn: Skip Taylor<br>P.O Box 1687<br>Bellflower, CA 90707 | Riverside County Tax Collector<br>PO Box 12005<br>Riverside, CA 92502 | Timothy Rand<br>10450 Trabuco St.<br>Bellflower, CA 90706 |
| Portsmouth City Treasurer<br>PO Box 85662<br>Richmond, VA 23285 | Seniority Loan<br>Attn: Skip Taylor<br>PO Box 1687<br>Bellflower, CA 90707 | Setal 1-6<br>Attn: Skip Taylor<br>PO Box 1687<br>Bellflower, CA 90707 |
| Prestige Cleaners, Inc.<br>Attn: Eddie Mannis<br>7536 Taggart Lane<br>Knoxville, TN 37938 | County of Riverside<br>c/o Martha E. Romero, Esq.<br>6516 Bright Ave.<br>Whittier, CA 90601 | Vision Windward I, LLC<br>c/o Lee & Sakumoto LLC<br>Denis Lee, Esq.<br>1164 Bishop St., #1201<br>Honolulu, HI 96813 |
| Robin Rix<br>354 Blue Cavern Point<br>Long Beach, CA 90803-6813 | Stephen Investments, Inc.<br>c/o Motsschieldler Michaelides etc.<br>Justin D. Harris, Esq.<br>1690 West Shaw Ave., #200<br>Fresno, CA 93711 | Kerri Lynne Randall<br>Assistant General Counsel<br>Reit Management & Research, LLC<br>400 Centre Street<br>Newton, MA 02458 |
| Commercial Building Associates LLC<br>c/o Willcox & Savage<br>Stephen W. Brewer, Esq.<br>One Commercial Plaza, #1800<br>Norfolk, VA 23510 | | |
| Merchants Automotive Group, Inc<br>c/o H. Jason Cohen, Esq.<br>Bernard & Bernard<br>10990 Wilshire Blvd., #1175<br>Los Angeles, CA 90024 | | |
| Inland Western Newport News Jefferson<br>c/o Ernie Zachary Park, Esq.<br>13215 E Penn St #510<br>Whittier, CA 90602 | | |