SIMON ARON (SBN 108183)
SUSAN K. SEFLIN (SBN 213865)
WOLF, RIFKIN, SHAPIRO, SCHULMAN & RABKIN, LLP
11400 West Olympic Boulevard, Ninth Floor
Los Angeles, California 90064-1565
Telephone: (310) 478-4100
Fax: (310) 479-1422
Attorneys for Chapter 11 Debtors in Possession and Plan Proponents

## UNITED STATES BANKRUPTCY COURT
## CENTRAL DISTRICT OF CALIFORNIA
## SANTA ANA DIVISION

| | |
|---|---|
| In re<br><br>Enivel, Inc., *et al.*,[1]<br><br>                    Debtors. | ) Case No. 8:10-bk-12735-RK (Jointly Administered)<br>)<br>) Chapter 11<br>)<br>)<br>) **[This Pleading Applies to All Cases]**<br>)<br>) **DEBTORS' NOTICE OF EMERGENCY MOTION**<br>) **AND EMERGENCY MOTION FOR ENTRY OF AN**<br>) **ORDER AUTHORIZING DEBTORS TO ENTER**<br>) **INTO ADDITIONAL POST-PETITION INSURANCE**<br>) **PREMIUM FINANCING AGREEMENTS WITH IPFS**<br>) **CORPORATION OF CALIFORNIA;**<br>) **MEMORANDUM OF POINTS AND AUTHORITIES;**<br>) **DECLARATION OF RIAZ CHAUTHANI**<br>)<br>)<br>)<br>) **Hearing:**<br>) Date:   February 28, 2011<br>) Time:  2:00 p.m.<br>) Place:  Courtroom "5D"<br>)          411 W. Fourth Street<br>)          Santa Ana, California 92701<br>)<br>)<br>)<br>) |

---

[1] The Debtors, together with their bankruptcy case numbers are: (i) Enivel, Inc., 8:10-bk-12735-RK; (ii) Cleaners Club Acquisition Sub, Inc., 8:10-bk-12742-RK, (iii) Steam Press Holdings, Inc., 8:10-bk-12740-RK, (iv) U.S. Dry Cleaning Services Corporation *dba* U.S. Dry Cleaning Corporation, 8:10-bk-12748-RK; (v) USDC Fresno, Inc., 8:10-bk-12745-RK; (vi) USDC Fresno 2, Inc., 8:10-bk-12746-RK; (vii) USDC Portsmouth, Inc., 8:10-bk-12743-RK; and (viii) USDC Tuchman Indiana, Inc., 8:10-bk-12736-RK.

**PLEASE TAKE NOTICE** that Enivel, Inc. and its related debtor entities (collectively, the "Debtors") have filed an emergency motion (the "Motion") pursuant to Local Bankruptcy Rule 9075-1, Sections 105 and 364(c) of 11 U.S.C. § 101 *et seq.* (the "Bankruptcy Code") and Rule 4001(c) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") for entry of an order (1) authorizing the Debtors to enter into additional premium financing agreements (the "Agreements") with IPFS Corporation of California *dba* Premium Financing Specialists ("PFS"), and (2) granting PFS first priority liens and security interests in all unearned or return premium dividends which may become payable under the policies identified in the Agreements, and liens and security interests in loss payments which reduce the unearned premiums, subject only to the interest of any mortgagee, trust deed  holder or other loss payee.

The Debtors recently reached a settlement with their insurer Argonaut Insurance Co. ("Argo") (which settlement the Debtors will be seeking approval of via separate motion).  In connection with the settlement, the Debtors agreed to continue to use Argo as their insurer.  As such, the Debtors have agreed to seek immediate approval for insurance premium financing for the policies set forth on Exhibits "1" and "2" to the annexed Declaration of Riaz Chauthani (the "Chauthani Declaration").  The first Agreement, which is attached as Exhibit "1" to the Chauthani Declaration, is in the amount of $37,245.00 and enables the Debtors to maintain policies (the "Fresno Policies") which provide the Debtors with coverage for automobile related claims, general liability and property claims for USDC Fresno, Inc. ("Fresno 1") and USDC Fresno 2, Inc. ("Fresno 2" and, with Fresno 1, the "Fresno Debtors").  The second Agreement, which is attached as Exhibit "2" to the Chauthani Declaration, is in the amount of $17,030.00 and enables the Debtors to maintain policies (the "CCI Policies") which provide the Debtors with coverage for, general liability and property claims for Cleaners Club Acquisition Sub, Inc. ("CCI").  The current Fresno Policies and CCI Policies expired on February 14, 2011.

With respect to the policies set forth on Exhibits "1" and "2", the total post-petition premiums owed are $44,275.  Of that, the Debtors are required to pay $18,293.75 in down payments.  Thus, by this Motion, the Debtors seek authority to finance $25,981.25.

Pursuant to the Agreements, PFS agrees to advance approximately 60% of the premiums, with the balance to be paid by the Debtors over a five month period. The Debtors must repay PFS the funds advanced, plus finance charges, by way of monthly installment payments as set forth on the Agreements. The annual percentage rate charged for the financing of the Policies is 9.15%.

As collateral for the loan, the Debtors are obligated to grant PFS a lien and security interest in all unearned or return premiums and dividends which may become payable under the policies, and a lien and security interest in loss payments which reduce the unearned premiums, subject only to the interest of any mortgagee, trust deed holder or other loss payee.

**PLEASE TAKE FURTHER NOTICE** that the Motion is based upon this Notice of Motion and Motion, the attached Memorandum of Points and Authorities, the Chauthani Declaration and all exhibits attached thereto, the entire record of this case, the statements, arguments and representations of counsel to be made at the hearing on the Motion, and any other evidence properly presented to the Court on the Motion.

**PLEASE TAKE FURTHER NOTICE** that any party wishing to object to the Motion must appear at the hearing on the Motion.

**WHEREFORE,** the Debtors respectfully requests that the Court enter an order: (i) authorizing the Debtors to enter into the two Agreements attached as Exhibits "1" and "2" to the Chauthani Declaration; (ii) granting PFS a first priority lien and security interest in all unearned or return premium dividends which may become payable under the policies, and a lien and security interest in loss payments which reduce the unearned premiums subject only to any mortgagee, trust deed holder, or other loss payee interest; and (iii) granting such other and further relief as the Court deems just and proper.

Dated: February 24, 2011                         Enivel, Inc. et al.


                                                 By:____/s/ *Susan K. Seflin*_____
                                                   Susan K. Seflin
                                                   Wolf, Rifkin, Shapiro, Schulman & Rabkin, LLP
                                                   Attorneys for Chapter 11 Debtors and
                                                   Debtor in Possession

3

# MEMORANDUM OF POINTS AND AUTHORITIES

## I.

## STATEMENT OF FACTS

A.    General Case Background.

1.    The Debtors commenced their Chapter 11 bankruptcy cases by filing Voluntary Petitions under Chapter 11 of the Bankruptcy Code on March 4, 2010 (the "Petition Date"). The Debtors are operating their business and managing their financial affairs as debtors in possession pursuant to Sections 1107 and 1108 of the Bankruptcy Code. The factual background regarding the Debtors, including their business operations, their capital, their debt structure and the events leading to the filing of the Debtors' chapter 11 cases, is as set forth in detail in the declaration of Robert Y. Lee filed in support of the Debtors' first day emergency motions, which was filed on March 5, 2010 [Docket # 13].

B.    Insurance Premium Financing.

2.    In connection with the operation of their business, it is critical that the Debtors maintain various insurance policies including, without limitation, automobile insurance, general liability and property insurance and workers compensation.

3.    The Debtors have engaged in discussions with various companies in the business of providing insurance premium financing and have determined that IPFS Corporation of California *dba* Premium Financing Specialists ("PFS") offers the most advantageous terms for such financing.

4.    On or about September 29, 2010, the Debtors filed their first emergency motion seeking approval of insurance premium financing with PFS (the "First Financing Motion"), which motion was approved pursuant to Court order entered on October 6, 2011. Pursuant to the First Financing Motion, the Debtors sought primarily to finance premiums related to workers compensation (which policies do not expire until June 2011).

5.    The Debtors recently reached a settlement with their insurer Argonaut Insurance Co. ("Argo") (which settlement the Debtors will be seeking approval of via separate motion). In connection with the settlement, the Debtors agreed to continue to use Argo as their insurer. As

4

such, the Debtors have agreed to seek immediate approval for insurance premium financing for the policies set forth on Exhibits "1" and "2" to the annexed Declaration of Riaz Chauthani (the "Chauthani Declaration"), which policies will be for automobile insurance, and general liability and property insurance for certain of the Debtors.

6.    The first Agreement, which is attached as Exhibit "1" to the Chauthani Declaration, is in the amount of $37,245.00 and enables the Debtors to maintain policies (the "Fresno Policies") which provide the Debtors with coverage for automobile related claims, general liability and property claims for USDC Fresno, Inc. ("Fresno 1") and USDC Fresno 2, Inc. ("Fresno 2" and, with Fresno 1, the "Fresno Debtors").

7.    The second Agreement, which is attached as Exhibit "2" to the Chauthani Declaration, is in the amount of $17,030.00 and enables the Debtors to maintain policies (the "CCI Policies") which provide the Debtors with coverage for, general liability and property claims for Cleaners Club Acquisition Sub, Inc. ("CCI").

8.    The current Fresno Policies and CCI Policies expired on February 14, 2011.

9.    With respect to the policies set forth on Exhibits "1" and "2", the total post-petition premiums owed are $44,275.  Of that, the Debtors are required to pay $18,293.75 in down payments.

10.    Pursuant to the Agreements, PFS agrees to advance approximately 60% of the premiums, with the balance to be paid by the Debtors over a five month period.  The Debtors must repay PFS the funds advanced, plus finance charges, by way of monthly installment payments as set forth on the Agreements.  The annual percentage rate charged for the financing of the Policies is 9.15%.

11.    The Agreements grant PFS liens and security interests in any and all unearned or return premiums and dividends which may become payable under the policies identified in the Agreements.  This property is not otherwise subject to a lien.  The Debtors request that PFS' liens and security interests in such premiums and dividends shall be senior to the rights of the Debtors' estates in this or any subsequent proceeding under the Bankruptcy Code and to the rights of any person claiming a lien or security interest in any assets of the Debtors.

12.    The Agreements also assign to PFS as security any loss payments under the policies which reduce the unearned premiums.  The Debtors request that PFS's liens and security interests in such payments be senior to the rights of the Debtors' estates in this or any subsequent proceeding under the Bankruptcy Code, provided, however, that such liens shall be subject to the interest of any mortgagees, trust deed holders, or other payees.

13.    The Debtors further request that PFS's liens and security interests be deemed duly perfected without further action by PFS.

## II.

## DISCUSSION

14.    A premium financing agreement can be described as follows:

> Premium financing involves an advance by the finance company to the insurance company or its agent of the premium due for the full term of the policy.  This advance is then repaid by the insured to the finance company in amortized monthly installments which include an additional amount to cover financing charges.  The finance company is secured in making this advance by obtaining the right to cancel the policy and to receive the return premium due upon cancellation if timely repayments are not made.

Baker & Co. v. Preferred Risk Mut. Ins. Co., 569 F.2d 1347, 1348 (5th Cir. 1978).  Premium financing arrangements are considered standard practice in the insurance industry, and inherent in their description is the assumption that the financing company is a lender rather than a guarantor or surety.  In re Redfeather Fast Freight, Inc., 1 B.R. 446, 449-450 (Bankr. D.Neb. 1979).

Furthermore, since the financing company is required to pay the full premiums for the insured rather than merely stand ready to pay in the event of insured's default, the "characterization of such transactions as secured loans is correct and will be followed by this Court."  Id.  at 450; see also In re Schwinn Bicycle Co., 200 B.R. 980, 988 fn.10 (Bankr. N.D.Ill. 1996) ("Courts have uniformly treated premium finance companies as secured creditors.")(court finding payments made to insurance premium financier not preferences).

Because the Agreement is therefore a post-petition secured loan, the Debtors must obtain authorization from the Court after notice and a hearing under 11 U.S.C. § 364.  Section 364(c) of the Bankruptcy Code provides:

> If the trustee is unable to obtain unsecured credit allowable under section 503(b)(1) of this title as an administrative expense, the court, after notice and a hearing, may authorize the obtaining of credit or the incurring of debt -
> (1) with priority over any or all administrative expenses of the kind specified in section 503(b) or 507(b) of this title;
> (2)   secured by a lien on property of the estate that is not otherwise subject to a lien; or
> (3)   secured by a junior lien on property of the estate that is subject to a lien.

11 U.S.C. § 364(c).

Under the Agreement, the Debtors will grant PFS security interests only in the policies themselves.  Therefore, the Debtors seeks authority under 11 U.S.C. § 364(c)(2).  Generally, courts apply a three-part test to assess a debtor's request under Section 364(c):

1.     The debtor cannot obtain credit unencumbered or without superpriority status;

2.     The credit transactions are necessary to preserve assets of the estate; and

3.     The terms of the credit agreement are fair, reasonable, and adequate.

3 L. King, Collier on Bankruptcy ¶ 364.04[1] (15th ed. 2001);  In re Crouse Group, Inc., 71 B.R. 544 (Bankr. E.D.Pa. 1987), aff'd., 75 B.R. 553 (E.D.Pa. 1987); In re Sobiech, 131 B.R. 917, 921 (S.D.N.Y. 1991) ("Under Section 364(c)(2), the court may authorize a debtor to incur secured credit out of the ordinary course of its business only if the debtor has been 'unable to obtain unsecured credit allowable under section 503(b)(1) . . . as an administrative expense.'")(quoting from Sapir v. CPQ Colorchrome Corp., 87 B.R. 835, 839 (Bankr. S.D.N.Y. 1988) aff'd. 881 F.2d 6 (2nd Cir. 1989)).

The Debtors submit that an evaluation of the facts in these cases under the relevant factors above, leads to the conclusion that the Debtors' request to enter into post-petition insurance premium financing agreements is reasonable and justified:

1.      Insurance premium financing arrangements, such as the ones at issue herein, are commonplace and standard practice in the insurance industry.  Although insurance premiums are prepaid at the inception of the coverage, the insurer "earns" its premiums on a pro rated basis, earning a portion each day it extends coverage to the insured.  Therefore, on any given day during the term of an insurance policy, there is an "unearned" premium balance that would have to be returned or refunded to the insured upon cancellation of the coverage.  Typically, these "unearned" premiums are assigned to the premium finance company as collateral for its loan to the insured.

2.      The Agreement comports with standard insurance premium financing arrangements.  It provides for the assignment by the Debtors to PFS of any and all "unearned" premiums and dividends which may become payable under the policies and any loss payments which reduce the "unearned" premiums.  Simply, the Agreements conform and comply with normal insurance industry practice and, therefore, it would be extremely difficult, if not impossible, for the Debtors to obtain insurance premium financing on an unsecured basis.

3.      The maintenance of the currently bound policies is critical to the continuation of the Debtors' business operations and, consequently, to the preservation of the Debtors' assets.  Unless the Agreements with PFS are authorized, the Debtors will not be able to maintain the subject policies, and the policies will be cancelled.  If the Debtors are unable to maintain coverage under the Policies, the Fresno Debtors and CCI will be subjected to a substantial risk of liability that could arise out of the Debtors' business operations.  In turn, these potential liabilities would place all of the assets of the Debtors' estates at risk and, ultimately, may impact

the Debtors' ability to continue its business operations and reorganize.  Moreover, the Office of the United States Trustee will not allow the Debtors to operate without adequate insurance in place.  Accordingly, the relief requested pursuant to the Motion is in the best interests of the estates and their creditors.

4.    The Debtors and their insurance broker have investigated, analyzed and discussed insurance premium financing options with other lenders and, the Debtors have determined, in their sound business judgment, that the terms and conditions offered by PFS are the most reasonable and fair and, therefore, should be accepted.  In sum, the terms and conditions of the Agreement are fair, reasonable, adequate and within the normal practice of the insurance industry.  Additionally, for the reasons set forth above, the Agreement is absolutely essential to the Debtors' continued business operations and for the preservation of these bankruptcy estates.

### III.

### <u>CONCLUSION</u>

**WHEREFORE,** the Debtors respectfully requests that the Court enter an order: (i) authorizing the Debtors to enter into the Agreements attached as Exhibits "1" and "2" to the Chauthani Declaration; (ii) granting PFS a first priority lien and security interest in all unearned or return premium dividends which may become payable under the policies, and a lien and security interest in loss payments which reduce the unearned premiums subject only to any mortgagee, trust deed holder, or other loss payee interest; and (iii) granting such other and further relief as the Court deems just and proper.

Dated:  February 24, 2011                    Enivel, Inc. et al.

By:   */s/ Susan K. Seflin*
　　　Susan K. Seflin
　　　Wolf, Rifkin, Shapiro, Schulman & Rabkin, LLP
　　　Attorneys for Chapter 11 Debtors and
　　　Debtors in Possession

## DECLARATION OF RIAZ CHAUTHANI

I, Riaz Chauthani, hereby declare as follows;

1.      Unless indicated otherwise, I have personal knowledge of the facts set forth below, and, if called to testify, would and could competently testify thereto.  I am the Director of Mergers & Acquisitions for Enivel, Inc., Cleaners Club Acquisition Sub, Inc., Steam Press Holdings, Inc., U.S. Dry Cleaning Services Corporation *dba* U. S. Dry Cleaning Corporation, USDC Fresno, Inc., USDC Fresno 2, Inc., USDC Portsmouth, Inc., and USDC Tuchman Indiana, Inc., the jointly administered Chapter 11 debtors and debtors in possession herein (collectively, the "Debtors").   Among other things, I am responsible for overseeing all of the Debtors' insurance policies including, among other things, terms of the policies and insurance premium financing.

2.      I submit this declaration in support of the Debtors' emergency motion for entry of an order (1) authorizing the Debtors to enter into premium financing agreements (the "Agreements") with IPFS Corporation of California *dba* Premium Financing Specialists ("PFS"), and (2) granting PFS first priority liens and security interests in all unearned or return premium dividends which may become payable under the policies identified in the Agreements, and liens and security interests in loss payments which reduce the unearned premiums, subject only to the interest of any mortgagee, trust deed  holder or other loss payee (the "Motion") to which this declaration is annexed.  I have reviewed the Motion and agree with the facts set forth therein.

3.      In connection with the operation of their business, it is critical that the Debtors maintain various insurance policies including, without limitation, automobile insurance, general liability and property insurance and workers compensation.

4.      The Debtors have engaged in discussions with various companies in the business of providing insurance premium financing and have determined that PFS offers the most advantageous terms for such financing.

5.      On or about September 29, 2010, the Debtors filed their first emergency motion seeking approval of insurance premium financing with PFS (the "First Financing Motion"), which motion was approved pursuant to Court order entered on October 6, 2011.  Pursuant to the

First Financing Motion, the Debtors sought primarily to finance premiums related to workers compensation (which policies do not expire until June 2011).

6.    The Debtors recently reached a settlement with their insurer Argonaut Insurance Co. ("Argo") (which settlement the Debtors will be seeking approval of via separate motion).  In connection with the settlement, the Debtors agreed to continue to use Argo as their insurer, and the Debtors have agreed to seek immediate approval for insurance premium financing for the policies set forth on Exhibits "1" and "2", which policies will be for automobile insurance, and general liability and property insurance for certain of the Debtors.

7.    The first Agreement, which is attached hereto as Exhibit "1", is in the amount of $37,245.00 and enables the Debtors to maintain policies (the "Fresno Policies") which provide the Debtors with coverage for automobile related claims, general liability and property claims for USDC Fresno, Inc. ("Fresno 1") and USDC Fresno 2, Inc. ("Fresno 2" and, with Fresno 1, the "Fresno Debtors").

8.    The second Agreement, which is attached hereto as Exhibit "2", is in the amount of $17,030.00 and enables the Debtors to maintain policies (the "CCI Policies") which provide the Debtors with coverage for, general liability and property claims for Cleaners Club Acquisition Sub, Inc. ("CCI").

9.    The current Fresno Policies and CCI Policies expired on February 14, 2011.

10.    With respect to the policies set forth on Exhibits "1" and "2", the total post-petition premiums owed are $44,275.  Of that, the Debtors are required to pay $18,293.75 in down payments.

11.    Pursuant to the Agreements, PFS agrees to advance approximately 60% of the premiums, with the balance to be paid by the Debtors over a five month period.  The Debtors must repay PFS the funds advanced, plus finance charges, by way of monthly installment payments as set forth on the Agreements.  The annual percentage rate charged for the financing of the Policies is 9.15%.

12.     The Agreements grant PFS liens and security interests in any and all unearned or return premiums and dividends which may become payable under the policies identified in the Agreements. This property is not otherwise subject to a lien.

13.     It is crucial to the Debtors' business operations that the Debtors have and maintain these insurance policies for Fresno and CCI.

I declare under penalty of perjury that the foregoing is true and correct.

Executed this 24th day of February, 2011 at Newport Beach, California.

_____
Riaz Chauthani

# Exhibit 1

**PFS AGREEMENT RE FRESNO DEBTORS**

1800 SUTTER ST., SUITE 365
CONCORD, CA 94520
(800)473-1171 FAX: (800)765-5355

**PFS PREMIUMFINANCING SPECIALISTS**

License # 973 9750

| | | | AGENT<br>(Name & Place of business) | INSURED<br>(Name and residence or business |
|---|---|---|---|---|
| **A** | CASH PRICE<br>(TOTAL PREMIUMS) | $37,245.00 | SELECT RISK INSURANCE SERVICES INC<br>PIIB  (FMR: SELECT PROGRAMS INS) | U S DRY CLEANING CORP<br>FRESNO |
| **B** | CASH DOWN<br>PAYMENT | $11,561.25 | 249 EAST OCEAN BLVD  SUITE 712 | 4040 MACARTHUR BLVD<br>STE 305 |
| **C** | PRINCIPAL BALANCE<br>(A MINUS B) | $25,683.75 | LONG BEACH        CA   90802<br>(562)216-9016    FAX: (562)216-9028 | NEWPORT BEACH    CA   92660 |

## LOAN DISCLOSURE

Quote Number: 27805

| ANNUAL PERCENTAGE RATE<br>The cost of your credit as a yearly<br>rate.<br>9.15 % | FINANCE CHARGE<br>The dollar amount the credit will<br>cost you.<br>$989.10 | Amount Financed<br>The amount of credit provided to<br>you or on your behalf.<br>$25,683.75 | Total of Payments<br>The amount you will have paid after you<br>have made all payments as scheduled.<br>$26,672.85 |
|---|---|---|---|

**YOUR PAYMENT SCHEDULE WILL BE**

| Number of Payments | Amount of Payments | When Payments Are Due | MONTHLY | ITEMIZATION OF THE AMOUNT FINANCED:<br>THE FULL AMOUNT FINANCED WAS PAID<br>TO THE INSURANCE COMPANY (COMPANIES). |
|---|---|---|---|---|
| 9 | $2,963.65 | Beginning: | 3/15/2011 | |

**Security:**  You are giving a security interest in the unearned premiums and, on commercial policies, loss payments which will reduce the unearned premium of the policies.

**Late Charges:**  A late charge will be imposed on any installment in default 10 days or more.  This late charge will be 5% of the installment due.

**Prepayment:**  If you pay your account off early, you may be entitled to a refund of a portion of the finance charge computed as provided in Sec. 18635, California Statute.  The finance charge includes a predetermined interest rate plus a non-refundable service/origination fee of $25.  See the contract below and on the reverse side for additional information about nonpayment, default and penalties.

| POLICY PREFIX<br>AND NUMBER | EFFECTIVE DATE<br>OF POLICY | SCHEDULE OF POLICIES<br>INSURANCE COMPANY AND GENERAL AGENT | COVERAGE | POL.<br>TRMS | PREMIUM |
|---|---|---|---|---|---|
| LDB931721700 | 2/15/2011 | ARGONAUT INSURANCE CO<br>ARGO GROUP US | PKG | 12 | $18,821.00 |
| BA931721000 | 2/15/2011 | ARGONAUT INSURANCE CO<br>ARGO GROUP US | AUTO | 12 | $14,240.00 |
| | | Continued On Schedule A | | Broker Fee | $3,000.00 |
| (CHECK CORRECT BOX)  ☐ PERSONAL    ☑ COMMERCIAL | | | | **TOTAL $** | **$37,245.00** |

The undersigned insured directs IPFS Corporation of California dba Premium Financing Specialists Corp. (herein, referred to as "Lender") to pay the premiums on the policies described above. In consideration of such premium payments, the insured agrees to pay Lender at the branch office address shown above, or as otherwise directed by Lender, the amount stated as Total of Payments in accordance with the Payment Schedule, both as shown in Loan Disclosure, subject to the provisions herein set forth.
The named insured:
1. Assigns to Lender as security for the total amount payable hereunder all unearned premiums and, on commercial policies, loss payments which will reduce the unearned premium which become payable under the policies listed above, as to all of which insured gives to Lender a security interest.
2. Understands that the finance charge begins to accrue as of the earliest policy effective date.
3. Agrees to all provisions set out above and on page 2.
**FOR INFORMATION CONTACT THE DEPARTMENT OF FINANCIAL INSTITUTIONS, STATE OF CALIFORNIA**

4.  Irrevocably appoints Lender attorney-in-fact of the Insured with full power of substitution and full authority upon any default to cancel all policies above identified, receive all sums assigned to Lender or in which it has granted Lender a security interest and to execute and deliver on behalf of the insured documents, instruments, forms and notices relating to the listed insurance policies in furtherance of this agreement.
NOTICE:
**A.  Do not sign this before you read the writing on the second page, even if otherwise advised.**
**B.  Do not sign this if it contains any blank lines.**
**C.  You are entitled to an exact copy of any agreement you sign.**
**D.  You have the right to pay in advance the unpaid balance due under this agreement and you may be entitled to a partial refund of the finance charge.**

_____     2-24-11
Signature of Insured or Authorized Agent         DATE
The undersigned hereby warrants and agrees to Agent's Representations set forth herein.

_____     _____
SIGNATURE OF AGENT                              DATE

(03/10) Copyright 2010 IPFS Corporation               02/18/11    PLUS - CACFEE

## FURTHER PROVISIONS OF PREMIUM FINANCE AGREEMENT

Insured and Lender agree that:

**5. EFFECTIVE DATE:** Agrees that this agreement shall be effective when written acceptance is mailed to insured by Lender.

**6. DELINQUENT PAYMENTS:** The acceptance by Lender of one or more late payments from the insured shall not estop Lender or be a waiver of the the rights of Lender to exercise all of its rights hereunder in the event of any subsequent late payment.

**7. CANCELLATION:** Lender may cancel the insurance policies after providing at least 10 days notice of its intent to cancel or any other required statutory notice if the insured does not pay any installment according to the terms of this Agreement and the unpaid balance due to Lender shall be immediately payable by the insured. Lender at its option may enforce payment of this debt without recourse to the security given to Lender.

**8. CANCELLATION CHARGES:** If Lender cancels any insurance policy in accordance with the terms of this Agreement and applicable law, then the insured will pay Lender a cancellation charge of $15, if permitted, up to the limit specified by law. If cancellation occurs, the insured agrees to pay a finance charge on the balance due at the contract rate of interest until the balance is paid in full or until such other dates as required by law. (Not applicable in KY, NV, and VT)

**9. INSUFFICIENT FUNDS (NSF) CHARGES:** If an insured's check or electronic funding is dishonored for any reason, the insured will pay to Lender a fee, if permitted by law, of $5 or the maximum permitted by law. (Not applicable in AL and KY)

**10. MONEY RECEIVED AFTER CANCELLATION:** Any payments made to Lender after Lender's Notice of Cancellation of the insurance policy(ies) has been mailed may be credited to the insured's account without any obligation on the part of Lender to request reinstatement of the policy. Any money Lender receives from an insurance company shall be credited to the balance due Lender with any surplus refunded to whomever is entitled the money. In the event that Lender does request a reinstatement of the policy on behalf of the insured, such a request does not guarantee that coverage under the policy will be reinstated or continued. Only the insurance company has authority to reinstate the policy. The insured agrees that Lender has no liability to the insured if the policy is not reinstated.

**11. ASSIGNMENT:** The insured agrees not to assign any policy listed hereon or any interest therein except for the interest of mortgages or loss payees, without the written consent of Lender, that Lender may sell, transfer and assign its rights hereunder or under any policy without the consent of the insured, and that all agreements made by the insured hereunder and all rights and benefits conferred upon Lender shall insure to the benefit of Lender's succesors and assigns (and any assignees thereof).

**12. INSURANCE AGENT OR BROKER:** The insured agrees that: the insurance agent or broker soliciting the policies or through whom the policies were issued is not the agent of Lender; and the agent or broker named on the front of this Agreement is neither authorized by Lender to receive installment payments under this Agreement nor is to make representations, orally or in writing, to the insured on Lender's behalf (except to the extent expressly required by applicable law). Where permissible by law, some portion of the finance charge may be paid by Lender to the insurance agent or broker executing this agreement as payment for his assistance in arranging the financing of your insurance premium. If you have any questions about this payment you should contact the agent/broker.

**13. FINANCING NOT A CONDITION:** The law does not require a person to enter into a premium finance agreement as a condition of the purchase of insurance.

**14. COLLECTION COSTS:** Insured agrees to pay attorney fees and other collection costs to Lender to the extent permitted by law, if this Agreement is referred to an attorney, who is not a salaried employee of Lender, to collect any money insured owes under this Agreement. (Not applicable in KY)

**15. LIMITATION OF LIABILITY:** The insured agrees that Lender's liability to the insured, any other person or entity for breach of any of the terms of this Agreement for the wrongful or improper exercise of any of its powers under this Agreement shall be limited to the amount of the principal balance outstanding, except in the event of Lender's gross negligence or willful misconduct. (Not applicable in KY)

**16. CLASSIFICATION AND FORMATION OF AGREEMENT:** This Agreement is and will be a general intangible and not an instrument (as those terms are used in the Uniform Commercial Code) for all purposes. Any electronic signature or electronic record may be used in the formation of this Agreement, and the signatures of the insured and agent and the record of this Agreement may be in electronic form (as those terms are used in the Uniform Electronic Transactions Act). A photocopy, a facsimile or other paper or electronic record of this Agreement shall have the same legal effect as a manually signed copy.

**17. REPRESENTATIONS AND WARRANTIES:** The insured represents that the insured is not insolvent or presently the subject of any insolvency proceeding (or if the insured is a debtor of bankruptcy, the bankruptcy court has authorized this transaction), if the insured is not an individual, that the signatory is authorized to sign this Agreement on behalf of the insured, and all parties responsible for payment of the premium are named and have signed this Agreement.

**18. ENTIRE DOCUMENT:** This document is the entire Agreement between Lender and the insured and can only be changed in writing and signed by both parties except that the insured authorizes Lender to insert or correct on this Agreement, if omitted or incorrect, the insurer's name and the policy number(s). Lender is also authorized to correct patent errors and omissions in this Agreement. The laws of the state indicated in the insured's address on the Agreement will govern this Agreement.

## AGENT'S REPRESENTATION

The agent/broker executing this agreement represents, warrants and agrees: (1) the insured has received a copy of this Agreement and has authorized this transaction, the insured's signature is genuine, and the down payment has been received from the insured, (2) the policies are in full force and effect and the information in the Schedule of Policies including the premium amounts is correct, (3) no direct company bill, audit, or reporting form policies or policies subject to retrospective rating or to minimum earned premium are included, except as indicated, and the deposit of provisional premiums is not less than anticipated premiums to be earned for the full term of the policies, (4) the policies can be cancelled by the insured or Lender (or its successors and assigns) on 10 days notice and the unearned premiums will be computed on the standard short rate or pro rata table except as indicated, (5) there are no bankruptcy, receivership, or insolvency proceedings affecting the insured, (6) to hold Lender, its successors and assigns harmless against any loss or expense (including attorney fees) resulting from these representations or from errors, omissions or inaccuracies of agent in preparing this Agreement, and (7) to pay the down payment and any funding amounts received from Lender under this Agreement to the insurance company or general agent (less any commissions where applicable) (8) to hold in trust for Lender any payments made or credited to the insured through or to you directly or indirectly, actually or constructively by the insurance companies and to pay the monies, as well as the unearned commissions to Lender upon demand to satisfy the outstanding indebtedness of the insured. (9) that the agent/broker has disclosed pursuant to Cal. Insurance Code § 778.2 any compensation he received from Lender for arranging, directing or performing services in connection with this agreement.

| AGENT | INSURED |
|---|---|
| SELECT RISK INSURANCE SERVICES INC | U S DRY CLEANING CORP |
| PIIB   (FMR: SELECT PROGRAMS INS) | FRESNO |
| 249 EAST OCEAN BLVD  SUITE 712 | 4040 MACARTHUR BLVD |
| | STE 305 |
| LONG BEACH        CA    90802 | NEWPORT BEACH      CA  92660 |
| (562)216-9016              FAX: (562)216-9028 | |

## SCHEDULE A

Quote Number: 27805

| POLICY PREFIX AND NUMBER | EFFECTIVE DATE OF POLICY | SCHEDULE OF POLICIES INSURANCE COMPANY AND GENERAL AGENT | COVERAGE | POL. TRMS | PREMIUM |
|---|---|---|---|---|---|
| UMB931721700 | 2/15/2011 | ARGONAUT INSURANCE CO ARGO GROUP US | UMBRLA | 12 | $1,184.00 |

# Exhibit 2

**PFS AGREEMENT RE CCI**

1800 SUTTER ST., SUITE 365
CONCORD, CA 94520
(800)473-1171 FAX: (800)765-5355

**PREMIUMFINANCING**
**IPFS** S P E C I A L I S T S

License # 973 9750

| | | | AGENT<br>(Name & Place of business) | INSURED<br>(Name and residence or business |
|---|---|---|---|---|
| **A** | **CASH PRICE**<br>**(TOTAL PREMIUMS)** | $17,030.00 | SELECT RISK INSURANCE SERVICES INC | U S DRYCLEANING CORP. |
| **B** | **CASH DOWN**<br>**PAYMENT** | $6,732.50 | PIIB  (FMR: SELECT PROGRAMS INS)<br>249 EAST OCEAN BLVD  SUITE 712 | C / O DANELLE<br>4040 MACARTHUR BLVD<br>SUITE 305 |
| **C** | **PRINCIPAL BALANCE**<br>**(A MINUS B)** | $10,297.50 | LONG BEACH          CA  90802<br>(562)216-9016    FAX: (562)216-9028 | NEWPORT BEACH    CA  92660<br>(949)863-9669 |

## LOAN DISCLOSURE

Quote Number: 27801

| ANNUAL PERCENTAGE RATE<br>The cost of your credit as a yearly rate.<br><br>9.65 % | FINANCE CHARGE<br>The dollar amount the credit will cost you.<br><br>$418.44 | Amount Financed<br>The amount of credit provided to you or on your behalf.<br>$10,297.50 | Total of Payments<br>The amount you will have paid after you have made all payments as scheduled.<br>$10,715.94 |
|---|---|---|---|

| YOUR PAYMENT SCHEDULE WILL BE | | | | ITEMIZATION OF THE AMOUNT FINANCED:<br>THE FULL AMOUNT FINANCED WAS PAID<br>TO THE INSURANCE COMPANY (COMPANIES). |
|---|---|---|---|---|
| Number of Payments | Amount of Payments | When Payments Are Due | MONTHLY | |
| 9 | $1,190.66 | Beginning: | 3/14/2011 | |

**Security:** You are giving a security interest in the unearned premiums and, on commercial policies, loss payments which will reduce the unearned premium of the policies.

**Late Charges:** A late charge will be imposed on any installment in default 10 days or more. This late charge will be 5% of the installment due.

**Prepayment:** If you pay your account off early, you may be entitled to a refund of a portion of the finance charge computed as provided in Sec. 18635, California Statute. The finance charge includes a predetermined interest rate plus a non-refundable service/origination fee of $25. See the contract below and on the reverse side for additional information about nonpayment, default and penalties.

| POLICY PREFIX<br>AND NUMBER | EFFECTIVE DATE<br>OF POLICY | SCHEDULE OF POLICIES<br>INSURANCE COMPANY AND GENERAL AGENT | COVERAGE | POL.<br>TRMS | PREMIUM |
|---|---|---|---|---|---|
| PENDING | 2/14/2011 | ARGONAUT INSURANCE CO<br>ARGO GROUP US | PKG | 12 | $5,742.00 |
| PENDING | 2/14/2011 | ARGONAUT INSURANCE CO<br>ARGO GROUP US | EXCESS | 12 | $521.00 |
| | | Continued On Schedule A | | Broker Fee | $3,300.00 |
| (CHECK CORRECT BOX) ☐ PERSONAL  ☑ COMMERCIAL | | | | **TOTAL $** | $17,030.00 |

The undersigned insured directs IPFS Corporation of California dba Premium Financing Specialists Corp. (herein, referred to as "Lender") to pay the premiums on the policies described above. In consideration of such premium payments, the insured agrees to pay Lender at the branch office address shown above, or as otherwise directed by Lender, the amount stated as Total of Payments in accordance with the Payment Schedule, both as shown in Loan Disclosure, subject to the provisions herein set forth.
The named insured:
1. Assigns to Lender as security for the total amount payable hereunder all unearned premiums and, on commercial policies, loss payments which will reduce the unearned premium which become payable under the policies listed above, as to all of which insured gives to Lender a security interest.
2. Understands that the finance charge begins to accrue as of the earliest policy effective date.
3. Agrees to all provisions set out above and on page 2.
**FOR INFORMATION CONTACT THE DEPARTMENT OF FINANCIAL INSTITUTIONS, STATE OF CALIFORNIA**

4. Irrevocably appoints Lender attorney-in-fact of the Insured with full power of substitution and full authority upon any default to cancel all policies above identified, receive all sums assigned to Lender or in which it has granted Lender a security interest and to execute and deliver on behalf of the insured documents, instruments, forms and notices relating to the listed insurance policies in furtherance of this agreement.
NOTICE:
**A. Do not sign this before you read the writing on the second page, even if otherwise advised.**
**B. Do not sign this if it contains any blank lines.**
**C. You are entitled to an exact copy of any agreement you sign.**
**D. You have the right to pay in advance the unpaid balance due under this agreement and you may be entitled to a partial refund of the finance charge.**

_____    2-24-11
Signature of Insured or Authorized Agent        DATE
The undersigned hereby warrants and agrees to Agent's Representations set forth herein.

_____    _____
SIGNATURE OF AGENT                   DATE

## FURTHER PROVISIONS OF PREMIUM FINANCE AGREEMENT

Insured and Lender agree that:

**5. EFFECTIVE DATE:** Agrees that this agreement shall be effective when written acceptance is mailed to insured by Lender.

**6. DELINQUENT PAYMENTS:** The acceptance by Lender of one or more late payments from the insured shall not estop Lender or be a waiver of the the rights of Lender to exercise all of its rights hereunder in the event of any subsequent late payment.

**7. CANCELLATION:** Lender may cancel the insurance policies after providing at least 10 days notice of its intent to cancel or any other required statutory notice if the insured does not pay any installment according to the terms of this Agreement and the unpaid balance due to Lender shall be immediately payable by the insured. Lender at its option may enforce payment of this debt without recourse to the security given to Lender.

**8. CANCELLATION CHARGES:** If Lender cancels any insurance policy in accordance with the terms of this Agreement and applicable law, then the insured will pay Lender a cancellation charge of $15, if permitted, up to the limit specified by law. If cancellation occurs, the insured agrees to pay a finance charge on the balance due at the contract rate of interest until the balance is paid in full or until such other dates as required by law. (Not applicable in KY, NV, and VT)

**9. INSUFFICIENT FUNDS (NSF) CHARGES:** If an insured's check or electronic funding is dishonored for any reason, the insured will pay to Lender a fee, if permitted by law, of $5 or the maximum permitted by law. (Not applicable in AL and KY)

**10. MONEY RECEIVED AFTER CANCELLATION:** Any payments made to Lender after Lender's Notice of Cancellation of the insurance policy(ies) has been mailed may be credited to the insured's account without any obligation on the part of Lender to request reinstatement of the policy. Any money Lender receives from an insurance company shall be credited to the balance due Lender with any surplus refunded to whomever is entitled the money. In the event that Lender does request a reinstatement of the policy on behalf of the insured, such a request does not guarantee that coverage under the policy will be reinstated or continued. Only the insurance company has authority to reinstate the policy. The insured agrees that Lender has no liability to the insured if the policy is not reinstated.

**11. ASSIGNMENT:** The insured agrees not to assign any policy listed hereon or any interest therein except for the interest of mortgages or loss payees, without the written consent of Lender, that Lender may sell, transfer and assign its rights hereunder or under any policy without the consent of the insured, and that all agreements made by the insured hereunder and all rights and benefits conferred upon Lender shall insure to the benefit of Lender's succesors and assigns (and any assignees thereof).

**12. INSURANCE AGENT OR BROKER:** The insured agrees that: the insurance agent or broker soliciting the policies or through whom the policies were issued is not the agent of Lender; and the agent or broker named on the front of this Agreement is neither authorized by Lender to receive installment payments under this Agreement nor is to make representations, orally or in writing, to the insured on Lender's behalf (except to the extent expressly required by applicable law). Where permissible by law, some portion of the finance charge may be paid by Lender to the insurance agent or broker executing this agreement as payment for his assistance in arranging the financing of your insurance premium. If you have any questions about this payment you should contact the agent/broker.

**13. FINANCING NOT A CONDITION:** The law does not require a person to enter into a premium finance agreement as a condition of the purchase of insurance.

**14. COLLECTION COSTS:** Insured agrees to pay attorney fees and other collection costs to Lender to the extent permitted by law, if this Agreement is referred to an attorney, who is not a salaried employee of Lender, to collect any money insured owes under this Agreement. (Not applicable in KY)

**15. LIMITATION OF LIABILITY:** The insured agrees that Lender's liability to the insured, any other person or entity for breach of any of the terms of this Agreement for the wrongful or improper exercise of any of its powers under this Agreement shall be limited to the amount of the principal balance outstanding, except in the event of Lender's gross negligence or willful misconduct. (Not applicable in KY)

**16. CLASSIFICATION AND FORMATION OF AGREEMENT:** This Agreement is and will be a general intangible and not an instrument (as those terms are used in the Uniform Commercial Code) for all purposes. Any electronic signature or electronic record may be used in the formation of this Agreement, and the signatures of the insured and agent and the record of this Agreement may be in electronic form (as those terms are used in the Uniform Electronic Transactions Act). A photocopy, a facsimile or other paper or electronic record of this Agreement shall have the same legal effect as a manually signed copy.

**17. REPRESENTATIONS AND WARRANTIES:** The insured represents that the insured is not insolvent or presently the subject of any insolvency proceeding (or if the insured is a debtor of bankruptcy, the bankruptcy court has authorized this transaction), if the insured is not an individual, that the signatory is authorized to sign this Agreement on behalf of the insured, and all parties responsible for payment of the premium are named and have signed this Agreement.

**18. ENTIRE DOCUMENT:** This document is the entire Agreement between Lender and the insured and can only be changed in writing and signed by both parties except that the insured authorizes Lender to insert or correct on this Agreement, if omitted or incorrect, the insurer's name and the policy number(s). Lender is also authorized to correct patent errors and omissions in this Agreement. The laws of the state indicated in the insured's address on the Agreement will govern this Agreement.

### AGENT'S REPRESENTATION

The agent/broker executing this agreement represents, warrants and agrees: (1) the insured has received a copy of this Agreement and has authorized this transaction, the insured's signature is genuine, and the down payment has been received from the insured, (2) the policies are in full force and effect and the information in the Schedule of Policies including the premium amounts is correct, (3) no direct company bill, audit, or reporting form policies or policies subject to retrospective rating or to minimum earned premium are included, except as indicated, and the deposit of provisional premiums is not less than anticipated premiums to be earned for the full term of the policies, (4) the policies can be cancelled by the insured or Lender (or its successors and assigns) on 10 days notice and the unearned premiums will be computed on the standard short rate or pro rata table except as indicated, (5) there are no bankruptcy, receivership, or insolvency proceedings affecting the insured, (6) to hold Lender, its successors and assigns harmless against any loss or expense (including attorney fees) resulting from these representations or from errors, omissions or inaccuracies of agent in preparing this agreement, and (7) to pay the down payment and any funding amounts received from Lender under this Agreement to the insurance company or general agent (less any commissions where applicable) (8) to hold in trust for Lender any payments made or credited to the insured through or to you directly or indirectly, actually or constructively by the insurance companies and to pay the monies, as well as the unearned commissions to Lender upon demand to satisfy the outstanding indebtedness of the insured. (9) that the agent/broker has disclosed pursuant to Cal. Insurance Code § 778.2 any compensation he received from Lender for arranging, directing or performing services in connection with this agreement.

| AGENT | INSURED |
|---|---|
| SELECT RISK INSURANCE SERVICES INC | U S DRYCLEANING CORP. |
| PIIB   (FMR: SELECT PROGRAMS INS) | C / O DANELLE |
| 249 EAST OCEAN BLVD  SUITE 712 | 4040 MACARTHUR BLVD |
| | SUITE 305 |
| LONG BEACH         CA    90802 | NEWPORT BEACH      CA   92660 |
| (562)216-9016              FAX: (562)216-9028 | (949)863-9669 |

## SCHEDULE A

Quote Number: 27801

| POLICY PREFIX AND NUMBER | EFFECTIVE DATE OF POLICY | SCHEDULE OF POLICIES INSURANCE COMPANY AND GENERAL AGENT | COVERAGE | POL. TRMS | PREMIUM |
|---|---|---|---|---|---|
| PENDING | 2/14/2011 | ARGONAUT INSURANCE CO<br>ARGO GROUP US | AUTO | 12 | $7,467.00 |

(03/10) Copyright 2010 IPFS Corporation

| In re:<br>Enivel, Inc. et al.,<br><br><div align="right">Debtors.</div> | CHAPTER 11<br><br>CASE NUMBER  8:10-bk-12735-RK and related<br>jointly administered entities |
|---|---|

**NOTE:** When using this form to indicate service of a proposed order, **DO NOT** list any person or entity in Category I. Proposed orders do not generate an NEF because only orders that have been entered are placed on the CM/ECF docket.

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding.  My business address is:
11400 West Olympic Boulevard, Ninth Floor
Los Angeles, California 90064-1565

A true and correct copy of the foregoing document described **DEBTORS' NOTICE OF EMERGENCY MOTION AND EMERGENCY MOTION FOR ENTRY OF AN ORDER AUTHORIZING DEBTORS TO ENTER INTO ADDITIONAL POST-PETITION INSURANCE PREMIUM FINANCING AGREEMENTS WITH IPFS CORPORATION OF CALIFORNIA; MEMORANDUM OF POINTS AND AUTHORITIES; DECLARATION OF RIAZ CHAUTHANI** will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner indicated below:

I.  **TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING ("NEF")** – Pursuant to controlling General Order(s) and Local Bankruptcy Rule(s) ("LBR"), the foregoing document will be served by the court via NEF and hyperlink to the document. On <u>February 24, 2011</u>  I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following person(s) are on the Electronic Mail Notice List to receive NEF transmission at the email address(es) indicated below:

- Simon Aron            saron@wrslawyers.com
- Martin J Brill           mjb@lnbrb.com
- Ronald K. Brown              rkbgwhw@aol.com
- Frank Cadigan          frank.cadigan@usdoj.gov
- Kathryn M.S. Catherwood         kmcatherwood@duanemorris.com
- Christopher Celentino ccelentino@duanemorris.com
- Susan S Davis          sdavis@coxcastle.com
- Denise Diaz            Denise.Diaz@rmsna.com
- Don Fisher            dfisher@ptwww.com
- Roger F Friedman        rfriedman@rutan.com
- Matthew Grimshaw       mgrimshaw@rutan.com
- Heather U Guerena      huguerena@duanemorris.com
- Kavita Gupta          kgupta@winthropcouchot.com
- Victor B Harris         vhlaw@prodigy.net
- Justin D Harris         jdh@mmwlawfirm.com, clr@mmwlawfirm.com
- Garrick A Hollander     sconnor@winthropcouchot.com
- Mark S Horoupian       mhoroupian@sulmeyerlaw.com
- Edward S Kim          ekim@hemar-rousso.com
- Simon Klevansky       sklevansky@kplawhawaii.com
- Steven B Lever         sblever@leverlaw.com
- Albert T. Liou          aliou@richardsonpatel.com
- Charles Liu           cliu@marshackhays.com
- David W. Meadows       david@davidwmeadowslaw.com
- Dawn A Messick         dmessick@duanemorris.com
- Christopher Minier       becky@ringstadlaw.com
- Dennis D Miller         dmiller@steinlubin.com
- Jeffrey D Mills          jmills@boselaw.com
- Randall P Mroczynski        randym@cookseylaw.com
- Kevin M Newman        knewman@menterlaw.com
- Christine M Pajak        cpajak@stutman.com
- Penelope Parmes        pparmes@rutan.com
- Martha E Romero        Romero@mromerolawfirm.com
- Susan K. Seflin         sseflin@wrslawyers.com
- Wayne R Terry          wterry@hemar-rousso.com
- United States Trustee (SA)      ustpregion16.sa.ecf@usdoj.gov
- Marc J Winthrop         mwinthrop@winthropcouchot.com, pj@winthropcouchot.com

☐ Service information continued on attached page

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

**F 9013-3.1**

| In re:<br>Enivel, Inc. et al.,<br><br>Debtors. | CHAPTER 11<br><br>CASE NUMBER 8:10-bk-12735-RK and related jointly administered entities |
| --- | --- |

**II. SERVED BY U.S. MAIL OR OVERNIGHT MAIL**(indicate method for each person or entity served)**:**

On **_____** I served the following person(s) and/or entity(ies) at the last known address(es) in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States Mail, first class, postage prepaid, and/or with an overnight mail service addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge <u>will be</u> completed no later than 24 hours after the document is filed.

N/A

☐ Service information continued on attached page

**III. SERVED BY PERSONAL DELIVERY, FACSIMILE TRANSMISSION OR EMAIL** (indicate method for each person or entity served): Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on <u>February 24, 2011</u> I served the following person(s) and/or entity(ies) by personal delivery, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows. Listing the judge here constitutes a declaration that personal delivery on the judge <u>will be</u> completed no later than 24 hours after the document is filed.

***Served Via Personal Service***
The Honorable Robert Kwan
U.S. Bankruptcy Court
Central District of California
411 W. Fourth Street, Suite 5165
Santa Ana, CA 92701-4593

***Served Via Email:***

<u>**Office of the United States Trustee:**</u>
Frank Cadigan    frank.cadigan@usdoj.gov

<u>**Debtors/Board:**</u>
Robert Y. Lee    robbie@usdrycleaning.com
Martin J. Brill    mjb@lnbyb.com

<u>**Counsel for the Committee:**</u>
Kathryn M.S. Catherwood    KMCatherwood@duanemorris.com

<u>**Counsel for Setal:**</u>
Penelope Parmes    pparmes@rutan.com

<u>**Counsel for Gamet:**</u>
Christine Pajak    CPajak@Stutman.com

☒ Service information continued on attached page

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

| February 24, 2011 | Susan K. Seflin | /s/ *Susan K. Seflin* |
| --- | --- | --- |
| *Date* | *Type Name* | *Signature* |

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*January 2009*

**F 9013-3.1**